

700 Milam Street
Suite 1400
Houston, Texas 77002
(713) 225-2300
Fax (713) 225-2340
www.seyfarth.com

Writer's direct phone
(713) 860-0065

Writer's e-mail
twatson@seyfarth.com

June 13, 2014

**VIA ECF**

Honorable P. Kevin Castel
U.S. District Court, S.D.N.Y.
500 Pearl Street
New York, New York 10007

Re: <u>Vangelakos et al. v. Wells Fargo Bank, N.A. et al.</u>, No. 13-cv-6574 (PKC)

Dear Judge Castel:

I write on behalf of Defendants in response to Plaintiffs' June 10, 2014 pre-motion conference letter regarding Plaintiffs' anticipated Motion to Quash and for Protective Order. Plaintiffs seek to quash two third-party subpoenas because they were served after the May 1, 2014 discovery deadline. Despite the fact that the parties continue to engage in discovery, and Plaintiffs currently have a deposition scheduled for July 2014, Plaintiffs assert (incorrectly) that the parties' agreement to extend the discovery deadline was limited to "a small number of specifically identified depositions."[1] The testimony on which Plaintiffs rely, however, does not include an agreement that the *only* exception to the discovery deadline will be the depositions discussed between counsel on the record. The parties simply agreed on the record that, if the depositions were to occur, they would occur after the discovery deadline.

Importantly, Plaintiffs' letter to the Court omits the fact that Defendants were not aware of the need to subpoena BTW Enterprises, Inc. ("BTW") and Ramapo College until *after* the depositions of Plaintiffs Barry Wayne and Ian King, which took place on April 22, 2014 and April 23, 2014, respectively. Accordingly, it was not possible for Defendants to serve the subpoenas in time for the responses to be due prior to the May 1, 2014 discovery cutoff. Moreover, the parties scheduled Wayne's and King's depositions so close to the discovery deadline in part to accommodate Plaintiffs and their counsel. As further demonstrated below, Defendants have been diligent in their efforts to seek this discovery and good cause exists to uphold these subpoenas after the discovery cutoff.

---

[1] Indeed, Plaintiffs state that, "at the April 23, 2014 deposition of Ian King the parties agreed that the only exception to the May 1, 2014 discovery cut-off date are a small number of specifically identified depositions."



The Parties Repeatedly Rescheduled Plaintiffs' Depositions, Often At Plaintiffs' Request

Although Defendants sought dates for the Plaintiffs' depositions since at least December 2013, the first Plaintiff's deposition did not take place until April 22, 2014—just nine days before the May 1, 2014 discovery deadline. The parties finally completed the last of the Plaintiffs' depositions one week ago, on June 6, 2014. Defendants sent the first notice to depose King and Wayne on December 19, 2013, setting the depositions for February 4, 2014.[2] In the months that followed, each of the Plaintiffs' depositions were postponed at least three times—only once at Defendants' request.

Part of the delay was the result of Plaintiffs' refusal to appear for deposition unless Defendants produced all of their emails. For instance, on January 20, 2014, Plaintiffs suggested postponing their depositions, asserting, "If we are going to proceed with depositions, we will need the clients' emails with sufficient time to digest them."[3] Defendants brought Plaintiffs' refusal to appear to deposition to the Court's attention in a January 28, 2014 letter (Doc. No. 19). On February 4, 2014, the Court ordered Plaintiffs to appear for depositions "no later than March 7, 2014." (Doc. No. 21 at 1). The Court further set forth a procedure for any future discovery disputes, which required the parties to meet in person for at least one hour in a good faith effort to resolve the dispute, and to submit a joint letter to the Court in the event of any outstanding dispute. (Doc. No. 21 at 2-3). Plaintiffs, however, did not comply with this Order before bringing the current issue before the Court, nor did they follow this Order before seeking to compel the depositions of Michelle Lee and Janice Osdoby (Doc. No. 35).

Wayne Refused To Identify Concurrent Employers In Responses To Written Discovery Requests

Plaintiffs' letter suggests that Wayne worked for and owned BTW only *prior* to his employment with Wachovia and/or Wells Fargo (hereinafter referred to as "Defendants"). But this is contradicted outright by Wayne's deposition testimony. He testified that he was the sole owner of BTW, which operated out of multiple locations and employed individuals other than himself, though he could not recall how many.[4] Wayne further testified that he continued this business *during* his employment with Wachovia, but did not recall when he stopped operating the business.[5]

Wayne claims that he worked at least 55 to 60 hours per week for Defendants, adding that he could have worked more than 70 hours per week.[6] But there are only so many hours in a day.

---

[2] True and correct copies of King and Wayne's deposition notices are attached hereto as Exhibits A and B, respectively.

[3] A true and correct copy of John Padilla's January 20, 2014 email is attached hereto as Exhibit C. Additional emails regarding the parties' efforts to schedule and reschedule depositions are attached hereto as Exhibit D.

[4] *See* Excerpts from the Deposition of Barry Wayne ("Wayne Dep."), attached hereto as Exhibit E, at 121:16-124:17. Defendants' counsel attempted to ascertain approximately how many employees BTW had, but Plaintiffs' counsel instructed Wayne not to answer on the basis of relevance. *Id.* at 123:4-124:25, 197:14-198:8.

[5] *Id*. at 194:7-195:16.

[6] Wayne Dep., Ex. E, at 10:17-10:25, 292:18-295:11, 307:7-307:25.



Thus, whatever work Wayne performed for another employer (including his own company) while employed by Defendants is relevant to his claims in this case. Indeed, courts have found that defendants are entitled to discovery about concurrent employers in FLSA cases. *See, e.g.*, *Galaviz-Zamora v. Brady Farms, Inc.*, 230 F.R.D. 499, 502-503 (W.D. Mich. 2005) (Carmody, M.J.) (noting, "Defendants are entitled to discover information regarding Plaintiffs' work history as such is clearly relevant to the issues raised by Plaintiffs' claims," and ordering that plaintiffs "execute an affidavit identifying every employer for whom they were employed during the time period they claim to have also worked for Defendants.").[7]

In support of their argument that the BTW subpoena is harassing and seeks irrelevant information, Plaintiffs rely on various inapposite cases. The *Vuona*, *Renaissance III Organization*, and *Maxwell* cases, for instance, are employment discrimination cases in which the defendant sought records from a prior employer. The courts in these cases found that records of prior employers were not relevant to whether the defendant discriminated against the plaintiffs. That is not the issue here. Similarly, *Barrington*, while an FLSA case, was a misclassification case in which the defendant sought the records of *prior* employers; the court found that prior employers' classification of the plaintiffs was not relevant to whether the defendant misclassified them. Defendants agree with the *Barrington* court and with Plaintiffs that *prior employers'* records are not relevant to "whether Plaintiffs worked more than 40 hours a week without receiving overtime compensation." But if a plaintiff operated another business or had another job *during* his employment with a defendant, that is relevant to answering the questions about how the plaintiff was spending his time during the week and whether he worked more than 40 hours for the defendant. Defendants are entitled to BTW's records during Wayne's employment with Defendants because they are relevant to the issues at the heart of this case.

Defendants sought this information before the discovery cutoff in interrogatories which sought information on any employment, including self-employment, during the time period at issue in this case. Wayne, however, refused to answer this interrogatory, objecting on the grounds that it was irrelevant, harassing, not reasonably calculated to lead to the discovery of admissible evidence, vague, ambiguous, overly broad, "not limited in time or scope," violating Wayne's privacy, and "beyond the scope of Local Rule 33(a)."[8] To the contrary, as the *Galaviz-Zamora* and *Montoya* cases illustrate, because Wayne alleges that he spent time working for Defendants that he did not record, any self-employment or other work that Wayne performed during his time with Defendants is relevant to this lawsuit—like any other activity to which Wayne committed a substantial amount of his time, such as significant hobbies, family obligations, and concurrent college courses.,. Moreover, the interrogatory falls within the scope of Local Civil Rule 33.3(b), which permits

---

[7] *See also Montoya v. S.C.C.P. Painting Contractors, Inc.*, 530 F. Supp. 2d 746, 751 (D. Md. 2008) (Gauvey, M.J.) (noting that the "names and addresses for each [other] employer for whom named plaintiffs worked and each work site location" were "obviously relevant to the [FLSA] claims," but denying motion to compel this information as premature because discovery was bifurcated and thus limited to class certification issues) (first alteration in original).

[8] *See* Plaintiff Barry Wayne's Responses and Objections to Defendant Wells Fargo Bank, N.A.'s First Set of Interrogatories, attached hereto as Exhibit F, at Interrogatory No. 10.



Defendants to serve interrogatories during discovery seeking this type of information "if they are a more practical method of obtaining the information sought than a request for production or a deposition."[9] Notably, though, in Requests for Production Nos. 12, 15, and 17, Defendants also sought documents reflecting income from any source during Wayne's employment, but Wayne did not produce any documents related to BTW. Indeed, Wayne suggested in his responses that he did not have any concurrent employment, objecting that the requested documents were already in Wells Fargo's constructive possession and responding, "see the documents produced by Defendant."[10]

Despite Defendants' written discovery requests, Wayne failed to provide any information about concurrent employment until he was specifically asked about BTW at his deposition—less than two weeks before the close of discovery. Defendants could not have served the subpoena to BTW within the discovery period. Given Wayne's refusal to provide this information until the last minute, Defendants should not be penalized for sending the subpoenas after he finally disclosed and confirmed his concurrent employment, particularly as Plaintiffs continue to schedule (and file motions to compel) depositions beyond the ordered close of discovery. (*See* Doc. No. 35).

King Provided Inconsistent Testimony Regarding His Enrollment At Ramapo College

Defendants should also be permitted to subpoena King's records from Ramapo College. Because King refused to provide documents responsive to Defendant's discovery requests seeking his concurrent school records, Defendants have no other means to determine how much time King spent at Ramapo College while he was also working for Defendants (and to refute his allegation that he worked between 70-75 hours each week during that time). In Request for Production No. 37, Defendants sought documents "related to [King's] participation or enrollment in any academic program during [his] employment with Defendants, including but not limited to [his] class schedules and class location."[11] But King refused to respond to this request, objecting on the grounds that is was privileged, irrelevant, harassing, vague, ambiguous, and overly broad. King further directed Defendants to documents in their possession, but none of King's Ramapo College records are in Defendants' possession. When asked about his responses to Defendants' requests for production at his deposition, King testified that he had never seen them before[12]—after his attorney

---

[9] An interrogatory is the more practical method of obtaining information about concurrent employers because a plaintiff might no longer have documents reflecting the concurrent employment by the time the defendant serves its discovery requests years later. Moreover, a defendant will be better equipped to ask the plaintiff about concurrent employment at deposition if it can identify the employer and obtain additional information prior to deposition.

[10] *See* Plaintiff Barry Wayne's Responses and Objections to Defendant Wells Fargo Bank, N.A.'s First Request for Production, attached hereto as Exhibit G.

[11] *See* Plaintiff Ian King's Responses and Objections to Defendant Wells Fargo Bank, N.A.'s First Request for Production, Exhibit 2 to Exhibit H, Excerpts from the Deposition of Ian King ("King Dep."), at Request for Production No. 37.

[12] *See* King Dep., Exhibit H, at 32:10-33:16; Exs. 2-3 to King Dep.



instructed him not to answer whether he had reviewed or provided responses to the requests based on the attorney-client privilege and the work-product privilege.[13]

At his deposition, King testified that he enrolled in an academic program at Ramapo College while working for Defendants. He first testified that he enrolled in one class that started in January 2009, and that he only attended three classes before dropping out.[14] When he was shown an email he sent to himself between his work email account and his Ramapo College email account in November 2009, he testified that perhaps he was enrolled in his only class during November 2009, not January 2009.[15] When further asked why he would send an email from his work email account discussing midterms he was taking at Ramapo College in October 2009 (which one would only take after attending more than three class sessions), he testified that he must have also taken an online class at Ramapo College that he forgot to mention earlier.[16] King testified that he worked between 70 and 75 hours each week for Defendants and, as a result, he was not able to attend classes.[17] But his testimony on his attendance at Ramapo College was inconsistent.

Thus, Defendants are entitled to know how many classes King took while working for Defendants, when those classes were scheduled, and his attendance at those classes. *See Cruthis v. Visionis*, No. 4:12-cv-00244-KGB, 2013 U.S. Dist. LEXIS 171483, at *8 (E.D. Ark. Dec. 5, 2013) (permitting subpoena to proceed as to plaintiffs' educational records (applications and dates of attendance and school schedules) for the dates that overlapped with the dates plaintiffs worked at defendant that were at issue in the litigation). Like Wayne's concurrent employment, this information is relevant to King's claims in this case. He has not yet supplemented his discovery responses,[18] and thus Defendants' only recourse is to subpoena these records  Defendants did not know they would have to subpoena these records until after King's April 23, 2014 deposition, when they first learned King was attending Ramapo College during his employment with Defendants. Even if Defendants' counsel had cleared conflicts and been able to send out the subpoena the following day, it would not have been returned before May 1, 2014 (as evidenced by the two-week turnaround of the current subpoena as referenced in Plaintiffs' letter to this Court).

Conclusion

Defendants have diligently sought discovery regarding Plaintiffs' concurrent employment and academic endeavors. But, as a result of Plaintiffs' inadequate and incomplete discovery responses and Defendants' willingness to reschedule depositions to accommodate Plaintiffs' schedules, Defendants were unaware of the need to subpoena Ramapo College and BTW until the

---

[13] King Dep., Ex. H, at 31:23-32:8.

[14] King Dep., Ex. H, at 73:12-75:24; Ex. 4 to King Dep.

[15] King Dep., Ex. H, at 160:19-162:21; Ex. 21 to King Dep.

[16] King Dep., Ex. H, at 165:3-169:7; Ex. 22 to King Dep.

[17] King Dep., Ex. H, at 124:7-124:17.

[18] Under Rule 26(e), King was required to supplement or correct his discovery responses once he realized that his responses with regard to his attendance at Ramapo College were incomplete. *See* FED. R. CIV. P. 26(e).



end of the discovery period. Accordingly, Defendants respectfully request that the Court deny Plaintiffs' Motion to Quash and for Protective Order. Defendants further request the Court's leave to serve the subpoenas upon BTW and Ramapo College as they were originally sent out on June 6, 2014.[19]

Respectfully submitted,

Counsel for Defendants:

SEYFARTH SHAW LLP

/s/ *Esteban Shardonofsky*

Esteban Shardonofsky

cc: Rhonda H. Wills, Esq. (via ECF)
     John M. Padilla, Esq. (via ECF)
     Michael Raymond DiChiara, Esq. (via ECF)
     Esteban Shardonofsky, Esq. (via ECF)
     Robert S. Whitman, Esq. (via ECF)
     Adam Smiley, Esq. (via ECF)

---

[19] Defendants agree to limit the subpoena of BTW's records to the period from January 1, 2007 through Wayne's termination on July 28, 2010.

17462700v.3