UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| GEORGE VANGELAKOS, IAN KING, JOSEPH KORONAKIS, AND BARRY WAYNE, Individually and on Behalf of All Others Similarly Situated, | § § § § § | |
| Plaintiffs, | § § | Case No. 13 CV 6574 |
| vs. | § § | |
| WELLS FARGO BANK, N.A., WELLS FARGO & COMPANY, WFC HOLDINGS CORPORATION, WACHOVIA CORPORATION, AND WACHOVIA BANK, N.A., | § § § § § § | |
| Defendants. | § | |

## PLAINTIFF IAN KING'S RESPONSES AND OBJECTIONS TO DEFENDANT WELLS FARGO BANK, N.A.'S FIRST SET OF INTERROGATORIES

Plaintiff Ian King serves these objections and answers to Defendant Wells Fargo Bank, N.A.'s First Set of Interrogatories as follows:



## PLAINTIFF IAN KING'S RESPONSES AND OBJECTIONS TO DEFENDANT
## WELLS FARGO BANK, N.A.'S FIRST SET OF INTERROGATORIES

### INTERROGATORY NO. 1:

Please state the amount of damages that you seek to recover from Defendants in these cases and the method that you used to calculate these damages. Identify any documents that support or relate to your answer to this Interrogatory.

### ANSWER:

*Plaintiff objects to this interrogatory to the extent that it calls for disclosure of any information that constitutes or is protected by the following privileges and exemptions from discovery: (a) the attorney-client privilege; (b) the work-product doctrine; (c) the investigative privilege, (d) the joint defense privilege; (e) community of interest privilege; (f) common interest privilege; (g) settlement negotiations privilege; and/or (h) any other privilege.*

*Plaintiff objects that the interrogatory impermissibly requests that Plaintiff marshal all evidence.*

*Subject to and without waiver of the foregoing objections, see Plaintiffs' Rule 26 disclosures and any amendments thereto.*

*Plaintiff will further supplement this response with specific numbers and calculations when Defendants produce pertinent documents that have been requested by Plaintiff. Moreover, Plaintiff reserves the right to supplement with the report of an economist in accordance with the schedule set by the Court for the designation of experts and production of expert reports.*

*Plaintiff will also provide redacted attorney time records and cost/litigation expense information, including expert fees, at the appropriate time.*

*Calculation of damages:*
- *Overtime wages: 1.5 times Plaintiff's regular rates of pay for all hours worked in excess of 40 hours in a work week. Plaintiff's regular rates of pay includes all wages, including bonuses and shift differentials*
- *Liquidated damages: equal to the amount of unpaid wages (applicable to FLSA damages)*
- *Pre-judgment & Post-judgment Interest: at the prevailing legal rate*
- *Attorney's fees: Plaintiff has agreed to a 40% contingency fee. The amount of attorneys' fees will be based on the contingency fee agreement or an amount awarded by the Court.*
- *Expert witness fees, costs and other recoverable litigation expenses: based on amount incurred*

*Damages for putative class members will be calculated utilizing the same method as named Plaintiffs.*

*With regard to documents, the following documents relate to Plaintiff's damages by providing further support:*

1. *time records showing Plaintiff was paid little or no overtime and was required to record a lunch break;*
2. *schedules;*
3. *pay records;*
4. *emails;*
5. *call night records;*
6. *bank documents relating to willfulness; and,*
7. *other records showing attendance at the bank and work performed by Plaintiff for Defendants*

*The following documents may also relate to Plaintiff's damages:*

*(a) Plaintiffs' disclosures, and any amendments thereto (b) any Defendants' disclosures, and any amendments thereto; (c) Plaintiffs' responses to any other discovery requests, (d) any Defendants' responses to any discovery requests, (e) any document produced by Plaintiffs, (f) any document produced by any Defendant, (g) any document identified in Plaintiffs' exhibit list, (h) any document identified in any Defendants' exhibit list, (i) any deposition transcript of a deposition taken in this matter; (j) any document produced by any party in this proceeding; and (k) any rebuttal evidence that cannot be anticipated and/or identified prior to trial.*

## INTERROGATORY NO. 2:

Please describe each and every method you used to record your time worked during your employment with Wells Fargo and/or Wachovia.  This request is not limited to methods provided by Wells Fargo and/or Wachovia to record your time worked.

## ANSWER:

*Plaintiff objects to this interrogatory to the extent that it calls for disclosure of any information that constitutes or is protected by the following privileges and exemptions from discovery:  (a) the attorney-client privilege; (b) the work-product doctrine; (c) the investigative privilege, (d) the joint defense privilege; (e) community of interest privilege; (f) common interest privilege; (g) settlement negotiations privilege; and/or (h) any other privilege.*

*Plaintiff objects that the interrogatory impermissibly requests that Plaintiff marshal all evidence.*

*Subject to and without waiver of the foregoing objections, see Plaintiffs' Rule 26 disclosures and any amendments thereto.*

*Plaintiff will further supplement this response with specific numbers and calculations when Defendants produce pertinent documents that have been requested by Plaintiff. Moreover, Plaintiff reserves the right to supplement with the report of an economist in accordance with the schedule set by the Court for the designation of experts and production of expert reports.*

## INTERROGATORY NO. 3:

Please state the number of uncompensated hours that you claim to have worked while employed by Wells Fargo and/or Wachovia form September 17, 2007 until the date your employment with Wells Fargo and/or Wachovia terminated. Also, state in your answer when you worked the hours that you have identified in your answer to this Interrogatory. If you do not know pricewise dates, state your best estimate of when you worked such hours. Identify any documents that support or relate to your answer to this Interrogatory.

## ANSWER:

*Plaintiff objects that this interrogatory is beyond the scope of Local Rule 33.3(a).*

*Plaintiff objects that the interrogatory impermissibly requests that Plaintiff marshal all evidence.*

*Subject to and without waiver of the foregoing objections, see Plaintiffs' Rule 26 disclosures and any amendments thereto.*

*Plaintiff will further supplement this response with specific numbers when Defendants produce pertinent documents that have been requested by Plaintiffs. Moreover, Plaintiff reserves the right to supplement with the report of an economist and/or statistician or other pertinent expert in accordance with the schedule set by the Court for the designation of experts and production of expert reports.*

*Plaintiff generally states that Plaintiff and other similarly situated financial specialists were required to work during lunch, before and after bank hours and/or on weekends for which they were not compensated properly.*

*Further, Defendants did not pay Plaintiff and other similarly situated financial specialists and personal bankers at time and one-half their regular rates of pay for all hours worked in excess of 40 hours in a work week.*

*With regard to documents, the following documents relate to Plaintiff's hours worked by providing further support:*

    *1. time records showing Plaintiff was paid little or no overtime and was required to record a lunch break;*
    *2. schedules;*

3.  *pay records;*
4.  *emails;*
5.  *call night records;*
6.  *statistical studies performed by Defendants; and,*
7.  *other records showing attendance at the bank and work performed by Plaintiff for Defendants*

*The following documents may also relate to Plaintiff's damages:*

*(a) Plaintiffs' disclosures, and any amendments thereto (b) any Defendants' disclosures, and any amendments thereto; (c) Plaintiffs' responses to any other discovery requests, (d) any Defendants' responses to any discovery requests, (e) any document produced by Plaintiffs, (f) any document produced by any defendant, (g) any document identified in Plaintiffs' exhibit list, (h) any document identified in any Defendants' exhibit list, (i) any deposition transcript of a deposition taken in this matter; (j) any document produced by any party in this proceeding; and (k) any rebuttal evidence that cannot be anticipated and/or identified prior to trial.*

## INTERROGATORY NO. 4:

Please identify all persons having knowledge of facts relevant to the claims and defenses in this lawsuit, or knowledge of any discoverable matter that might reasonably be calculated to lead to the discovery of admissible evidence in the case. For each such person, describe what information or knowledge that you believe he or he possesses. This Interrogatory is intended to include all witnesses you may call at trial, and Defendants will object to any attempt to call as a witness at trial any person not identified in your answer or supplemental answers to this Interrogatory.

## ANSWER:

*Plaintiff objects to this request to the extent it asks to "identify all persons having knowledge of facts relevant to the claims and defenses in this lawsuit, or knowledge of any discoverable matter that might reasonably be calculated to lead to the discovery of admissible evidence in the case," as opposed to merely seeking the identity of persons known to have knowledge of relevant facts, as follows:*

1)  *the request is beyond the proper form and scope of discovery;*
2)  *the request is overly broad and unreasonably burdensome; and*
3)  *the request invades Plaintiff's attorneys' thought processes.*

*Plaintiff further objects that this interrogatory is beyond the scope of Local Rule 33.3(a), to the extent it seeks anything more than "names of witnesses with knowledge of information relevant to the subject matter of the action."*

*Plaintiff further objects that the interrogatory impermissibly requests that Plaintiff marshal all evidence, particularly to the extent it seeks a description of "what information or knowledge that you believe he or [s]he possesses," as opposed to a general topic or area of knowledge.*

*Plaintiff further objects to this interrogatory to the extent it seeks a trial witness list as premature. Plaintiff will supplement when required by the Federal Rules of Civil Procedure to provide a witness list for trial.*

*Subject to and without waiver of the foregoing objections, as of this time, Plaintiff has reason to believe the following persons have knowledge of facts relevant to the claims made the basis of the above referenced matters:*

*__Plaintiffs (with knowledge of hours worked and pay practices of Defendants)__*
*George Vangelakos*
*Ian King*
*Joseph Koronakis*
*Barry Wayne*
*(in addition, there is a group of putative class members that have knowledge of relevant facts)*

*Please also see (a) Plaintiffs' complaint, and any amendments thereto; (b) Plaintiffs' disclosures, and any amendments thereto (c) any Defendants' disclosures, and any amendments thereto; (d) Plaintiffs' responses to any other discovery requests, (e) any Defendants' responses to any discovery requests, (f) any document produced by Plaintiffs and individuals identified therein, (g) any document produced by any defendant and individuals identified therein, (h) any document identified in Plaintiffs' exhibit list and any individuals identified therein, (i) any document identified in any Defendants' exhibit list and any individuals identified therein, (j) any deposition transcript of a deposition taken in this matter and individuals identified therein; (k) any document produced by any party in this proceeding; and (l) any rebuttal evidence that cannot be anticipated and/or identified prior to trial and any individuals identified therein.*

*Plaintiff reserves the right to supplement this response, particularly with the names of Plaintiffs' managers and other additional management personnel with knowledge of hours worked, scheduling, and overtime approval practices.*

## INTERROGATORY NO. 5:

If you have ever recorded any communication or conversation with any of Defendants' employees or former employees, please identify the date(s) of those communications or conversations and the person(s) involved.

## ANSWER:

*Plaintiff objects to this interrogatory to the extent that it calls for disclosure of any information that constitutes or is protected by the following privileges and exemptions from discovery: (a) the attorney-client privilege; (b) the work-product doctrine; (c) the investigative privilege, (d) the joint defense privilege, (e) community of interest privilege; (f) common interest privilege; (g) settlement negotiations privilege; and/or (h) any other privilege.*

*Plaintiff further objects that the interrogatory is vague, ambiguous, overly broad, and not limited in time or scope.*

*Plaintiff objects that this interrogatory is beyond the scope of Local Rule 33.3(a).*

*Subject to and without waiver of the foregoing objections, Plaintiff states that Plaintiff does not have any responsive audio recordings in Plaintiff's possession.*

## INTERROGATORY NO. 6:

If you have ever been a party in any lawsuit or administrative proceeding other than this lawsuit (including bankruptcy proceedings), please state the date on which each lawsuit or administrative action was commenced, the style of the case, the names of all parties, the forum in which the action was commenced, the claims asserted by or against you, and the outcome or present status of each matter.

## ANSWER:

*Plaintiff objects to this interrogatory as follows:*

1) *the interrogatory seeks information that is irrelevant;*
2) *the interrogatory is harassing and not reasonably calculated to lead to the discovery of admissible evidence;*
3) *the interrogatory is vague, ambiguous, overly broad, and not limited in time or scope;*
4) *the interrogatory violates Plaintiff's privacy; and*
5) *the interrogatory is beyond the scope of Local Rule 33.3(a).*

## INTERROGATORY NO. 7:

If you have ever testified under oath in any proceeding, including depositions, please identify the parties, case number, and forum, and state the nature of the matter in which you provided testimony.

ANSWER:

*Plaintiff objects to this interrogatory as follows:*

1) *the interrogatory seeks information that is irrelevant;*
2) *the interrogatory is harassing and not reasonably calculated to lead to the discovery of admissible evidence;*
3) *the interrogatory is vague, ambiguous, overly broad, and not limited in time or scope;*
4) *the interrogatory violates Plaintiff's privacy; and*
5) *the interrogatory is beyond the scope of Local Rule 33.3(a).*

## INTERROGATORY NO. 8:

Please identify each and every person who has been contacted or interviewed by you or your agents in connection with this matter, whether or not you intend to call such individuals as witnesses in this matter.

ANSWER:

*Plaintiff objects to this request to the extent it asks to "identify each and every person who has been contacted or interviewed by you or your agents in connection with this matter," as opposed to merely seeking the identity of persons known to have knowledge of relevant facts, as follows:*

1) *the request is beyond the proper form and scope of discovery;*
2) *the request is overly broad and unreasonably burdensome; and*
3) *the request invades Plaintiff's attorneys' thought processes.*

*Plaintiff further objects that this interrogatory is beyond the scope of Local Rule 33.3(a), to the extent it seeks anything more than "names of witnesses with knowledge of information relevant to the subject matter of the action."*

*Plaintiff further objects that the interrogatory impermissibly requests that Plaintiff marshal all evidence.*

*Plaintiff further objects to this interrogatory to the extent it seeks a trial witness list as premature. Plaintiff will supplement when required by the Federal Rules of Civil Procedure to provide a witness list for trial.*

**INTERROGATORY NO. 9:**

Please identify all entities to which you applied for employment during your employment with Wells Fargo and/or Wachovia.

**ANSWER:**

*Plaintiff objects to this interrogatory as follows:*

1) *the interrogatory seeks information that is irrelevant;*
2) *the interrogatory is harassing and not reasonably calculated to lead to the discovery of admissible evidence;*
3) *the interrogatory is vague, ambiguous, overly broad, and not limited in time or scope;*
4) *the interrogatory violates Plaintiff's privacy; and*
5) *the interrogatory is beyond the scope of Local Rule 33.3(a).*

**INTERROGATORY NO. 10:**

Please identify all instances of employment, self-employment, volunteering, or contract work you provided to any entity other than Defendants during your employment with Wells Fargo and/or Wachovia.

**ANSWER:**

*Plaintiff objects to this interrogatory as follows:*

1) *the interrogatory seeks information that is irrelevant;*
2) *the interrogatory is harassing and not reasonably calculated to lead to the discovery of admissible evidence;*
3) *the interrogatory is vague, ambiguous, overly broad, and not limited in time or scope;*
4) *the interrogatory violates Plaintiff's privacy; and*
5) *the interrogatory is beyond the scope of Local Rule 33.3(a).*

**INTERROGATORY NO. 11:**

Please identify each of your Branch Managers, Store Managers, Financial Center Managers, Financial Sales Leaders, and/or District Managers during your employment with Wells Fargo and/or Wachovia.

**ANSWER:**

*Plaintiff objects to this request to the extent it asks to "identify each of your Branch Managers, Store Managers, Financial Center Managers, Financial Sales Leaders, and/or District*

*Managers," as opposed to merely seeking the identity of persons known to have knowledge of relevant facts, as follows:*

1) *the request is beyond the proper form and scope of discovery;*
2) *the request is overly broad and unreasonably burdensome; and*

*Plaintiff further objects that this interrogatory is beyond the scope of Local Rule 33.3(a), to the extent it seeks anything more than "names of witnesses with knowledge of information relevant to the subject matter of the action."*

*Please also see (a) Plaintiffs' complaint, and any amendments thereto; (b) Plaintiffs' disclosures, and any amendments thereto (c) any Defendants' disclosures, and any amendments thereto; (d) Plaintiffs' responses to any other discovery requests, (e) any Defendants' responses to any discovery requests, (f) any document produced by Plaintiffs and individuals identified therein, (g) any document produced by any defendant and individuals identified therein, (h) any document identified in Plaintiffs' exhibit list and any individuals identified therein, (i) any document identified in any Defendants' exhibit list and any individuals identified therein, (j) any deposition transcript of a deposition taken in this matter and individuals identified therein; (k) any document produced by any party in this proceeding; and (i) any rebuttal evidence that cannot be anticipated and/or identified prior to trial and any individuals identified therein.*

*Plaintiff reserves the right to supplement this response.*

## INTERROGATORY NO. 12:

Please identify each branch, store, and/or financial center you physically worked at during your employment with Wells Fargo and/or Wachovia.

## ANSWER:

*Plaintiff objects to this request to the extent it asks to "identify each branch, store, and/or financial center you physically worked at," as follows:*

1) *the request is beyond the proper form and scope of discovery;*
2) *the request is overly broad and unreasonably burdensome; and*

*Please also see (a) Plaintiffs' complaint, and any amendments thereto; (b) Plaintiffs' disclosures, and any amendments thereto (c) any Defendants' disclosures, and any amendments thereto; (d) Plaintiffs' responses to any other discovery requests, (e) any Defendants' responses to any discovery requests, (f) any document produced by Plaintiffs and individuals identified therein, (g) any document produced by any defendant and individuals identified therein, (h) any document identified in Plaintiffs' exhibit list and any individuals identified therein, (i) any document identified in any Defendants' exhibit list and any*

*individuals identified therein, (j) any deposition transcript of a deposition taken in this matter and individuals identified therein; (k) any document produced by any party in this proceeding; and (i) any rebuttal evidence that cannot be anticipated and/or identified prior to trial and any individuals identified therein.*

*Plaintiff reserves the right to supplement this response.*

Dated: January 22, 2014
Houston, Texas

Respectfully submitted,

By: /s/ Rhonda H. Wills
    Rhonda H. Wills
    ATTORNEY-IN-CHARGE
    State Bar No. 00791943
    WILLS LAW FIRM
    1776 Yorktown, Suite 600
    Houston, Texas 77056
    Telephone: (713) 528-4455
    Facsimile: (713) 528-2047

    John M. Padilla
    State Bar No. 00791395
    PADILLA & RODRIGUEZ, L.L.P.
    1776 Yorktown Street, Suite 110
    Houston, Texas 77056
    Telephone: (713) 574-4600
    Facsimile: (713) 574-4601

    Michael DiChiara
    Krakower DiChiara, LLC
    One Depot Square
    77 Market Street, Suite 2
    Park Ridge, NJ 07656
    Telephone: (201) 746-0303
    Facsimile: (866) 417-2333

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I, the undersigned counsel, hereby certify that on January 22, 2014, I served the

foregoing document on the following counsel *via* certified mail return receipt requested.

Timothy M. Watson
Esteban Shardonofsky
Kendra K. Paul
Rachel M. Hoffer
SEYFARTH SHAW LLP
700 Louisiana Street, Suite 3700
Houston, Texas 77002

Robert S. Whitman
Adam J. Smiley
Mark A. Casciari
SEYFARTH SHAW LLP
620 Eighth Avenue
New York, NY 10018-1405

*/s/John M. Padilla*
John M. Padilla

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| GEORGE VANGELAKOS, IAN KING, JOSEPH KORONAKIS, AND BARRY WAYNE, Individually and on Behalf of All Others Similarly Situated, | § § § § § | |
| Plaintiffs, | § § | Case No. 13 CV 6574 |
| vs. | § § | |
| WELLS FARGO BANK, N.A., WELLS FARGO & COMPANY, WFC HOLDINGS CORPORATION, WACHOVIA CORPORATION, AND WACHOVIA BANK, N.A., | § § § § § § | |
| Defendants. | § § | |

## PLAINTIFF IAN KING'S RESPONSES AND OBJECTIONS TO DEFENDANT WELLS FARGO BANK, N.A.'S SECOND OF INTERROGATORIES

Plaintiff Ian King serves these objections and answers to Defendant Wells Fargo Bank, N.A.'s Second Set of Interrogatories as follows:

**PLAINTIFF IAN KING'S RESPONSES AND OBJECTIONS TO DEFENDANT
WELLS FARGO BANK, N.A.'S SECOND SET OF INTERROGATORIES**

## INTERROGATORY NO. 13:

List all e-mail addresses you currently use or have used since September 17, 2006. Your response to this request should include all e-mail accounts you have sent e-mail from or someone has sent e-mail from on your behalf using your legal name, anonymously, or under an assumed name.

## ANSWER:

*Plaintiff objects to this interrogatory as follows:*

1) *the interrogatory seeks information that is irrelevant;*
2) *the interrogatory is harassing and not reasonably calculated to lead to the discovery of admissible evidence;*
3) *the interrogatory is vague, ambiguous, and overly broad;*
4) *the interrogatory violates Plaintiff's privacy; and*
5) *the interrogatory is beyond the scope of Local Rule 33.3(a)-(b).*

Dated: March 6, 2014
       Houston, Texas

Respectfully submitted,

By:/s/ Rhonda H. Wills
    Rhonda H. Wills
    ATTORNEY-IN-CHARGE
    State Bar No. 00791943
    WILLS LAW FIRM
    1776 Yorktown, Suite 600
    Houston, Texas 77056
    Telephone: (713) 528-4455
    Facsimile: (713) 528-2047

    John M. Padilla
    State Bar No. 00791395
    PADILLA & RODRIGUEZ, L.L.P.
    1776 Yorktown Street, Suite 110
    Houston, Texas 77056
    Telephone: (713) 574-4600
    Facsimile: (713) 574-4601

    Michael DiChiara
    Krakower DiChiara, LLC
    One Depot Square
    77 Market Street, Suite 2
    Park Ridge, NJ 07656
    Telephone: (201) 746-0303
    Facsimile: (866) 417-2333

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I, the undersigned counsel, hereby certify that on March 6, 2014, I served the foregoing document on the following counsel *via* certified mail return receipt requested.

Timothy M. Watson
Esteban Shardonofsky
Kendra K. Paul
Rachel M. Hoffer
SEYFARTH SHAW LLP
700 Louisiana Street, Suite 3700
Houston, Texas 77002

Robert S. Whitman
Adam J. Smiley
Mark A. Casciari
SEYFARTH SHAW LLP
620 Eighth Avenue
New York, NY 10018-1405

*/s/John M. Padilla*
John M. Padilla

Message

| | |
|---|---|
| From: | James M. Carifa [jmcarifa@yorkhillinvestments.com] |
| Sent: | 11/19/2008 11:23:42 AM |
| To: | ian.king1@wachovia.com |
| BCC: | n484312@cf.wachovia.com |
| Subject: | RE: cheetos |

Crazy!  Are you going to go back to school while working?  That's a good call -- makes you even more marketable!  Where are you going?

The markets are making me dizzy!  Some days I want to stick my finger down my throat so I can purge myself of the lunch I don't deserve like a little high school girl.  And other days I am giddy with joy like the same high school girl that just John Stamos on a street corner.

You gotta love this environment!  What's up for the weekend?

---

**From:** ian.king1@wachovia.com [mailto:ian.king1@wachovia.com]
**Sent:** Wednesday, November 19, 2008 11:21 AM
**To:** James M. Carifa
**Subject:** cheetos
Hey buddy,
Whats up over at York Hill?  I decided to go back to school and get my CPA, I start in Jan.  Scary!
Ian King
Financial Specialist
Ramsey NJ
Office (201)934-4383
Fax   (201)236-9645

EXHIBIT
Kby 4
Am 11-03/14

WFESI_Vangelakos 00003338

Message

| From: | Ian King [iking6497@yahoo.com] |
|-------|-------------------------------|
| Sent: | 6/24/2009 8:08:21 AM |
| To: | ian.king1@wachovia.com |
| Subject: | Fwd: eTicket Itinerary and Receipt for Confirmation A534XP |

Ian King

Begin forwarded message:

**From:** bigk14@optonline.net

**Date:** June 21, 2009 8:45:58 AM EDT

**To:** iking6497@yahoo.com

**Subject: Fwd: eTicket Itinerary and Receipt for Confirmation A534XP**

To ensure delivery of this e-mail please add **continentalairlines@continental.com** to your address book or approved senders list. See instructions for adding us to your address book.

Confirmation:

A534XP

Issue Date: April 25, 2009

Top of Form

/wEPDwUKLTU5|

Bottom of Form

| Traveler | eTicket Number | Frequent Flyer | Seats |
|----------|----------------|----------------|-------|
| GERSHON/KIRSTENMRS | 0052182431472 | CO-BJ299235 | 22D/--- |
| KING/IANMR | 0052182431473 | CO-EP219354 | 22E/--- |

FLIGHT INFORMATION

| Day, Date | Flight | Class | Departure City and Time | Arrival City and Time | Aircraft | Meal |
|-----------|--------|-------|-------------------------|-----------------------|----------|------|
| Fri, 26JUN09 | CO318 | V | NEWARK EWR (EWR) **7:55PM** | TAMPA (TPA) **11:24PM** | 737-800 | |
| Sun, 28JUN09 | CO319 | W | TAMPA (TPA) **5:00PM** | NEWARK EWR (EWR) **8:19PM** | 757-200 | Snack |

FARE INFORMATION

Fare Breakdown

| Airfare: | 226.05USD | Form of Payment: |
|----------|-----------|------------------|
| Tax: | 16.95 | MASTERCARD |



EXHIBIT
King 21
Jan 4/23/14
PENGAD 800-631-6989

Confidential

U.S. Flight Segment Tax:          7.20          Last Four Digits 5040
U.S. Security Service Fee:         5.00
U.S. Passenger Facility Charge:    9.00
Per Person Total:                  264.20USD

eTicket Total:                     528.40USD

The airfare you paid on this itinerary totals: 452.10 USD

The taxes you paid on this itinerary total: 76.30 USD

Fare Rules:     Additional charges may apply for changes in addition to any fare rules listed.
                NONREF/OVALUAFTDPT/CHGFEE
                Cancel reservations before the scheduled departure time or TICKET HAS NO VALUE.

---

### eTicket Reminders

**Check-in Requirement** - Bags must be checked and boarding passes obtained at least 30 minutes prior to scheduled departure. Baggage will not be accepted and advance seat assignments may be cancelled if this condition is not met. **EXCEPTION** - when departing from Atlanta, Denver, Las Vegas, Los Angeles, Orlando, Philadelphia, Reno or Tampa, the check in requirement time for Passengers and Bags is 45 minutes.

**Boarding Requirement** - Passengers must be prepared to board at the departure gate with their boarding pass at least 15 minutes prior to scheduled departure.

Failure to meet the **Boarding Requirements** may result in cancellation of reservations, denied boarding, removal of checked baggage from the aircraft and loss of eligibility for denied boarding compensation.

Bring your boarding pass or this eTicket Receipt along with photo identification to the airport.

The FAA now restricts carry-on baggage to one bag plus one personal item (purse, briefcase, laptop computer, etc.) per passenger.

For up to the minute flight information, sign-up for your Flight Status E-mail at continental.com or call 1-800-784-4444; in Spanish 1-800-579-3938.

If flight segments are not flown in order, your reservation will be cancelled. Rebooking will be subject to the fare rules governing your ticket.

For the most current status of your reservation, flights and other important policies, go to continental.com.

Your eTicket is non transferable and valid for 1 year from the issue date unless otherwise noted in the fare rules

Confidential

above.

## Important Baggage Information

For information regarding baggage fees, allowances, weight/size restrictions and embargoes, go to continental.com. If your flight originates with one of our codeshare partners or another airline you will need to check the operating carrier for baggage policies.

## Check In Online the Day Before You Fly

With continental.com Check-in, you can print your own boarding pass within 24 hours of your flight. You can review or change your seats, confirm Elite upgrades, plus get everything you need to go straight to the gate. For more information go to continental.com.

## Earn Bonus Miles and Save with Our Car Partners

Compare great rental car rates and earn up to 1,500 OnePass® miles with Avis and Hertz. Book your next car rental at continental.com

## Reserve a Conference Room at the Airport

Presidents Club members can now utilize conference room facilities even if not traveling that day. Stop by any location or call the Presidents Club at 1-800-322-2640 for details.

## IMPORTANT CONSUMER NOTICES

Your travel is subject to Continental's Contract of Carriage terms. The Contract is available at any CO ticketing facility, continental.com or by calling 1-800-525-0280. The Contract terms include rules about limits on liability for personal injury or death and for loss, damage, or delay of goods and baggage, check-in times, overbooking, security issues, reservations, denial of carriage, refunds, claims limits and restrictions, including time limitations for filing a claim or lawsuit, and schedule changes and irregularities.

On domestic flights, Continental's maximum liability limit for checked baggage is $3000 USD per passenger and Continental excludes liability for all unchecked baggage. On international flights governed by the Warsaw Convention (including the domestic portions of the trip), maximum liability for checked baggage is approximately $640 USD per bag, and $400 USD per passenger for unchecked baggage. On international flights governed by the Montreal Convention (including domestic portions of the trip) maximum liability for baggage is 1,000 SDRs per passenger for checked and unchecked baggage. You can declare excess valuation on certain baggage at the airport, additional fees will apply. Continental excludes liability for fragile, valuable or perishable items carried in all baggage including jewelry, computers, cash, camera equipment and similar valuables. If any of these items are

Confidential

lost, damaged or delayed, you will not be entitled to any reimbursement.

For international flights, a treaty known as the Warsaw or the Montreal Convention may apply to the entire journey. When applicable, it governs, amongst other things, the liability of the carrier for baggage and death of or injury to passengers.

Your ticket jacket and the Contract of Carriage contain further detail of these terms.

**Personal Health** - For important health tips before your flight, including information on a serious condition called Deep Vein Thrombosis, please visit Continental.com or call 1800WECARE2. This information is also in the Continental magazine on board your flight.

**Thank you for using continental.com**

Legal Notices. Privacy Policy
Copyright © 2009 Continental Airlines, Inc. All rights reserved.

**Please do not reply to this message using the "reply" address.**
For assistance, please contact Continental Airlines via telephone or via e-mail.

Confidential

Message

| | |
|---|---|
| **From:** | Ian King/GBG/WACH [n484312@cf.wachovia.com] |
| **Sent:** | 7/8/2009 12:37:49 PM |
| **To:** | iking6497@yahoo.com |
| **Subject:** | Re: Fwd: Questions for Homily at Marriage Ceremony |
| **Attachments:** | ATT04841.txt |

Ian King
Financial Specialist
Ramsey NJ
Office (201)934-4383
Fax    (201)236-9645

-----Ian King <iking6497@yahoo.com> wrote: -----
To: "ian.king1@wachovia.com" <ian.king1@wachovia.com>
From: Ian King <iking6497@yahoo.com>
Date: 07/07/2009 09:27PM
Subject: Fwd: Questions for Homily at Marriage Ceremony

Ian King

Begin forwarded message:
**From:** Jackie Pignatelli < jackiepignatelli@yahoo.com >
**Date:** June 9, 2009 7:48:05 AM EDT
**To:** Ian King < iking6497@yahoo.com >
**Subject: Fw: Questions for Homily at Marriage Ceremony**

Hi love-

Father Jerry sent this to me.... he would like us to fill it out on our own and send it back to him individually.

We can talk about the scripture parts together.

Love you.

J

--- On **Mon, 6/8/09, W Jerome Bracken < _WJerome.Bracken@shu.edu_ >** wrote:

From: W Jerome Bracken < WJerome.Bracken@shu.edu >
Subject: Questions for Homily at Marriage Ceremony
To: " jackiepignatelli@yahoo.com " < jackiepignatelli@yahoo.com >
Date: Monday, June 8, 2009, 9:35 PM
June 8, 2009

Dear Jackie and Ian,

Confidential

When I have a wedding, I like to build the homily on the experience of the two getting married. . So I would like to do the same with you. It would help me, if you would each answer the questions below, not together, but individually, and then send your answers to me, individually.

1.How did you meet your fiancee? Would you describe this, giving your initial impressions. Jackie and I met through friends in which we had in common.  We had seen each other in differant settings but never really conversed.  I always felt drawn to her in some way.  We finally made the effort to converse and our: thoughts, ideas, opinions just clicked.

2. How long have you known each other? It's hard to say.  Jackie and discovered that our paths have crossed a number of times in the past.  One example would be; Jackie worked at the deli my family and I frequented and she remembers the strange sandwich orders we placed.  6 years would be an answer for the time we knowingly have known each other.

3. What do you like and/or admire about your fiancee? Jackie's hard work and attention to detail is very admirable.  The love she gives is a quality that many others can't measure up to.  I like her opinions about almost every topic and admire the strength within her and her family.  Jackie knows whats important in life and what can wait.  She makes me a better person.

4. What does your fiancee like and/or admire about you?
I believe Jackie admires the way I treat others and the trust she can place within me.

5. What do you like about your work and how do you think it will help you in your
marriage? I have learned that hard work and due diligence pays off both at work and at home.  Respecting others opinions and thoughts is the basis of constructive communication.  In my opinion communication is the most important tool in a relationship.

6. What is the Scripture reading from the Old Testament that you picked? What do you like about it or why did you pick it?

7. What is the Scripture reading (Epistle) that you picked from the New Testament? What do you like about it or why did you pick it?

8. What is the Scripture reading (Gospel) that you picked from the New Testament?  What do you like about it or why did you pick it?

9. What does marriage mean to you personally?

10. What are your hopes for your marriage?


I do appreciate your taking the time to do this.


Sincerely,  Fr. Jerry

WFESI_Vangelakos 00005596

Ian King
Financial Specialist
Ramsey NJ
Office  (201)934-4383
Fax    (201)236-9645


-----Ian King <iking6497@yahoo.com> wrote: -----


To: "ian.king1@wachovia.com" <ian.king1@wachovia.com>
From: Ian King <iking6497@yahoo.com>
Date: 07/07/2009 09:27PM
Subject: Fwd: Questions for Homily at Marriage Ceremony



Ian King

Begin forwarded message:


From: Jackie Pignatelli < jackiepignatelli@yahoo.com >
Date: June 9, 2009 7:48:05 AM EDT
To: Ian King < iking6497@yahoo.com >
Subject: Fw: Questions for Homily at Marriage Ceremony


Hi love-
Father Jerry sent this to me.... he would like us to fill it out on our own and send it
back to him individually.
We can talk about the scripture parts together.
Love you.
J

--- On Mon, 6/8/09, W Jerome Bracken < WJerome.Bracken@shu.edu > wrote:


From: W Jerome Bracken < WJerome.Bracken@shu.edu >
Subject: Questions for Homily at Marriage Ceremony
To: " jackiepignatelli@yahoo.com " < jackiepignatelli@yahoo.com >
Date: Monday, June 8, 2009, 9:35 PM

Confidential

June 8, 2009

Dear Jackie and Ian,

When I have a wedding, I like to build the homily on the experience of the two getting married. . So I would like to do the same with you. It would help me, if you would each answer the questions below, not together, but individually, and then send your answers to me, individually.

1.How did you meet your fiancee? Would you describe this, giving your initial impressions. Jackie and I met through friends in which we had in common.  We had seen each other in differant settings but never really conversed.  I always felt drawn to her in some way.  We finally made the effort to converse and our: thoughts, ideas, opinions just clicked.

2. How long have you known each other? It's hard to say.  Jackie and discovered that our paths have crossed a number of times in the past.  One example would be; Jackie worked at the deli my family and I frequented and she remembers the strange sandwich orders we placed.  6 years would be an answer for the time we knowingly have known each other.

3. What do you like and/or admire about your fiancee? Jackie's hard work and attention to detail is very admirable.  The love she gives is a quality that many others can't measure up to.  I like her opinions about almost every topic and admire the strength within her and her family.  Jackie knows whats important in life and what can wait. She makes me a better person.

4. What does your fiancee like and/or admire about you?
I believe Jackie admires the way I treat others and the trust she can place within me.

5. What do you like about your work and how do you think it will help you in your marriage? I have learned that hard work and due diligence pays off both at work and at home.  Respecting others opinions and thoughts is the basis of constructive communication.  In my opinion communication is the most important tool in a relationship.

6. What is the Scripture reading from the Old Testament that you picked? What do you like about it or why did you pick it?

7. What is the Scripture reading (Epistle) that you picked from the New Testament? What do you like about it or why did you pick it?

8. What is the Scripture reading (Gospel) that you picked from the New Testament?  What do you like about it or why did you pick it?

9. What does marriage mean to you personally?

10. What are your hopes for your marriage?

I do appreciate your taking the time to do this.

Sincerely,  Fr. Jerry

Confidential

Message

| | |
|---|---|
| **From:** | ian.king1@wachovia.com [ian.king1@wachovia.com] |
| **Sent:** | 7/8/2009 12:37:49 PM |
| **To:** | Ian King [iking6497@yahoo.com] |
| **Subject:** | Re: Fwd: Questions for Homily at Marriage Ceremony |

Ian King
Financial Specialist
Ramsey NJ
Office (201)934-4383
Fax   (201)236-9645

-----Ian King <iking6497@yahoo.com> wrote: -----
To: "ian.king1@wachovia.com" <ian.king1@wachovia.com>
From: Ian King <iking6497@yahoo.com>
Date: 07/07/2009 09:27PM
Subject: Fwd: Questions for Homily at Marriage Ceremony


Ian King

Begin forwarded message:
**From:** Jackie Pignatelli < jackiepignatelli@yahoo.com >
**Date:** June 9, 2009 7:48:05 AM EDT
**To:** Ian King < iking6497@yahoo.com >
**Subject: Fw: Questions for Homily at Marriage Ceremony**

Hi love-

Father Jerry sent this to me.... he would like us to fill it out on our own and send it back to him individually.

We can talk about the scripture parts together.

Love you.

J

--- On **Mon, 6/8/09, W Jerome Bracken < _WJerome.Bracken@shu.edu_ >** wrote:

From: W Jerome Bracken < WJerome.Bracken@shu.edu >
Subject: Questions for Homily at Marriage Ceremony
To: " jackiepignatelli@yahoo.com " < jackiepignatelli@yahoo.com >
Date: Monday, June 8, 2009, 9:35 PM
June 8, 2009

Dear Jackie and Ian,
When I have a wedding, I like to build the homily on the experience of the two getting married. . So I would like to do

Confidential

the same with you. It would help me, if you would each answer the questions below, not together, but individually, and then send your answers to me, individually.

1. How did you meet your fiancee? Would you describe this, giving your initial impressions. Jackie and I met through friends in which we had in common.  We had seen each other in differant settings but never really conversed.  I always felt drawn to her in some way.  We finally made the effort to converse and our: thoughts, ideas, opinions just clicked.

2. How long have you known each other? It's hard to say.  Jackie and discovered that our paths have crossed a number of times in the past.  One example would be; Jackie worked at the deli my family and I frequented and she remembers the strange sandwich orders we placed.  6 years would be an answer for the time we knowingly have known each other.

3. What do you like and/or admire about your fiancee? Jackie's hard work and attention to detail is very admirable.  The love she gives is a quality that many others can't measure up to.  I like her opinions about almost every topic and admire the strength within her and her family.  Jackie knows whats important in life and what can wait.  She makes me a better person.

4. What does your fiancee like and/or admire about you?
I believe Jackie admires the way I treat others and the trust she can place within me.

5. What do you like about your work and how do you think it will help you in your marriage? I have learned that hard work and due diligence pays off both at work and at home.  Respecting others opinions and thoughts is the basis of constructive communication.  In my opinion communication is the most important tool in a relationship.

6. What is the Scripture reading from the Old Testament that you picked? What do you like about it or why did you pick it?

7. What is the Scripture reading (Epistle) that you picked from the New Testament? What do you like about it or why did you pick it?

8. What is the Scripture reading (Gospel) that you picked from the New Testament?  What do you like about it or why did you pick it?

9. What does marriage mean to you personally?

10. What are your hopes for your marriage?


I do appreciate your taking the time to do this.

Sincerely,  Fr. Jerry

WFESI_Vangelakos 00005600

Message
_____

| | |
|---|---|
| **From:** | ian.king1@wachovia.com [ian.king1@wachovia.com] |
| **Sent:** | 2/7/2008 3:26:30 PM |
| **To:** | iking6497@yahoo.com |
| **Subject:** | Fw: desk top |
| **Attachments:** | AppWrap.exe; CURRENT MORTGAGE.doc; custom banking.pdf; Customer Referral Disclosure.doc; daily trani.xls; deposit pipeline log form.xls; favorites.doc; federal compliance.pdf; HEL_Guide.doc; insurance verification.pdf; liquid collateral.htm; Loan Option Calculator NJ HELS.xls; Loan Questionaire.doc; mortgagee cluase.doc; New Customer Follow-up Script FINAL.doc; pel flyer.doc; pel guide.doc; pel hel offer.dot; PERSONAL FINANCIAL STATEMENT.doc; pick a pay.xls; retail loan app.pdf; debt worksheet.doc; Team Contact 1st 2nd.xls; TrendBasedCoachingFSLCoachingFS.doc; WACHOVIA SECURITIES.doc |

Ian King
Financial Specialist
Park Ridge NJ 07656
Office (201)930-5622
Fax    (201)712-4932

-----Forwarded by Ian King/GBG/WACH on 02/07/2008 03:26PM -----
To: Ian King/GBG/WACH@Wachovia
From: Ian King/GBG/WACH
Date: 08/31/2007 10:54AM
Subject: desk top

Ian King
Financial Specialist
Paramus NJ 07652
Office (201)689-4935
Fax    (201)670-4119

Confidential

WFESI_Vangelakos 00028260

Message

| | |
|---|---|
| **From:** | ian.king1@wachovia.com [ian.king1@wachovia.com] |
| **Sent:** | 8/5/2008 9:04:52 AM |
| **To:** | iking6497@yahoo.com |
| **Subject:** | Fw: Invitation to connect on LinkedIn |

Ian King
Financial Specialist
Ramsey NJ
Office (201)934-4383
Fax    (201)236-9645

-----Forwarded by Ian King/GBG/WACH on 08/05/2008 09:01AM -----
To: "Ian ian.king1@wachovia.com" <ian.king1@wachovia.com>
From: Joseph Gomez <jomez78@gmail.com>
Sent by: messages-noreply@bounce.linkedin.com
Date: 08/04/2008 07:40PM
Subject: Invitation to connect on LinkedIn

# LinkedIn

Ian,

I'd like to add you to my professional network on LinkedIn.

-Joseph

Learn more:
https://www.linkedin.com/e/isd/319832249/b-BLGUO9/

**WHAT IS LINKEDIN?**

**Get answers:**
Your network is full of industry experts willing to share advice. Joining Joseph Gomez's network is the first step to accessing this valuable resource.

© 2008, LinkedIn Corporation

Confidential

Message

| | |
|---|---|
| **From:** | ian.king1@wachovia.com [ian.king1@wachovia.com] |
| **Sent:** | 6/1/2009 8:48:45 AM |
| **To:** | iking6497@yahoo.com |
| **Subject:** | Fw: Evite invitation from Dave DeVoe and Sydney Schloss |

Ian King
Financial Specialist
Ramsey NJ
Office (201)934-4383
Fax    (201)236-9645

-----Forwarded by Ian King/GBG/WACH on 06/01/2009 08:48AM -----
To: "ian.king1@wachovia.com" <ian.king1@wachovia.com>
From: Dave DeVoe and Sydney Schloss <info@mailva.evite.com>
Date: 05/31/2009 02:30PM
Subject: Evite invitation from Dave DeVoe and Sydney Schloss

Having trouble viewing this email? Go to invitation .
Add info@mailva.evite.com to your address book to ensure that you receive Evite emails in your inbox.





Confidential



Note. Replies to this email will go directly to the person who sent this message, not to Evite.
Don't want to get Evite emails from this person?   Click here to block this user or remove yourself from this guest list.
Evite respects your privacy. For more information, please review our Privacy Policy

Confidential

Message

| | |
|---|---|
| **From:** | iking6497@yahoo.com [iking6497@yahoo.com] |
| **Sent:** | 6/1/2009 11:28:49 AM |
| **To:** | ian.king1@wachovia.com |
| **BCC:** | n484312@cf.wachovia.com |
| **Subject:** | Fw: King's Bachelor Party! |


Sent via BlackBerry by AT&T

---

**From:** Paul Harmon
**Date:** Sun, 31 May 2009 09:24:06 -0700 (PDT)
**To:** <sdcbluesky@yahoo.com>; <Gta99k2000@hotmail.com>; <giancarloking@mac.com>; <Jmcarifa@yorkhillinvestments.com>; <michael.pignatelli@gmail.com>; <fillip.gershon@multifin.com>; <dave@1st2ndmortgage.com>; Ray Eugene Harmon<raymondharmon@hotmail.com>; Ian Dick King<iking6497@yahoo.com>; Kelly Masterson<kellypmasterson@hotmail.com>; <shaunbeckett@gmail.com>
**Subject:** Re: King's Bachelor Party!
OK guys the golf is booked.

Saturday we are playing noon at http://www.ccpbigridge.com/

Sunday 10:30, 10:40, 10:50 at http://www.mountainmanor.com/golf.html

The Saturday course gave us a discount of $10 per person making it $55, and Sunday is $55 also, that is greens fees with cart.

I just wanted to let everyone know that the house is only allowed 5 cars for parking. I assume Fil and Carifa will most likely be coming on there own. Ian and I were planning to leave early afternoon on Friday, possibly with Ian, myself, Giancarlo/Paulo and Scotty boom body. Yes believe it or not Scotty has booked a flight is supposed to be coming in from CO. As we all know we have to see it to believe it! That is three cars. Is it possible to get Razor, Dave, Becks, Mike P., Big Man and possibly one of the King brothers into 2 cars leaving some time Friday after work? I believe Big Man is going to join us Friday night and then head into work Saturday morning , then be back Saturday night joining us for golf Sunday, is that right Kel? I just want to make sure that we get this coordinated so that we only have 5 cars. Lets get this in order then we will discuss food/drinks.

So right now we are at per person $100 for the place and $110 for golf for those playing both days.

The house is located at 23 Pine Hill Ct, East Stroudsburg, PA 18302.Here is the link to this property's website for pics it the  Pine Hill house:
www.houseinthepoconos.com


--- On Tue, 5/5/09, Paul Harmon <pharmon22@yahoo.com> wrote:

Confidential

From: Paul Harmon <pharmon22@yahoo.com>
Subject: King's Bachelor Party!
To: sdcbluesky@yahoo.com, Gta99k2000@hotmail.com, giancarloking@mac.com, Jmcarifa@yorkhillinvestments.com, michael.pignatelli@gmail.com, fillip.gershon@multifin.com, dave@1st2ndmortgage.com, "Ray Eugene Harmon" <raymondharmon@hotmail.com>, "Ian Dick King" <iking6497@yahoo.com>, "Kelly Masterson" <kellypmasterson@hotmail.com>, shaunbeckett@gmail.com
Date: Tuesday, May 5, 2009, 8:36 PM

I just wanted to update everyone with the details I have so far.  We are booked in a house near Shawnee PA that sleeps 14 for June 5th through the 7th.  It was the nicest I could find and think it should be great.  Outdoor fire pit, 64 inch TV lots of beds.  We are going to play golf Saturday and Sunday.  I will get the Tee Times but there are about 5 courses really close to the house with one of them being a Jack N. Signature course, but I don't think I will do that to you guys.

I wanted to get some feedback about food, beer, etc.  The house has a grill and was thinking of hitting Costco before we leave and getting a bunch of food for everyone.  I also have no problem getting a large amount of booze as well (Don't worry Giancarlo I will get plenty of wine coolers for you).  Its really up to you guys so please let me know your thoughts.

Right now we are at about $100 a piece for the house and the golf should come in at about the same.  I don't think that it is a stretch that we will have plenty of gambling going on between golf and poker.

Please let me know if you have any questions.

I just wanted to update everyone with the details I have so far.  We are booked in a house near Shawnee PA that sleeps 14 for June 5th through the 7th.  It was the nicest I could find and think it should be great.  Outdoor fire pit, 64 inch TV lots of beds.  We are going to play golf Saturday and Sunday.  I will get the Tee Times but there are about 5 courses really close to the house with one of them being a Jack N. Signature course, but I don't think I will do that to you guys.

I wanted to get some feedback about food, beer, etc.  The house has a grill and was thinking of hitting Costco before we leave and getting a bunch of food for everyone.  I also have no problem getting a large amount of booze as well (Don't worry Giancarlo I will get plenty of wine coolers for you).  Its really up to you guys so please let me know your thoughts.

Right now we are at about $100 a piece for the house and the golf should come in at about the same.  I don't think that it is a stretch that we will have plenty of gambling going on between golf and poker.

Please let me know if you have any questions.

Confidential

Confidential

WFESI_Vangelakos 00068272

Message

| | |
|---|---|
| **From:** | iking6497@yahoo.com [iking6497@yahoo.com] |
| **Sent:** | 8/6/2009 8:54:15 AM |
| **To:** | ian.king1@wachovia.com |
| **Subject:** | Fw: Invitation to view maryrosec@gmail.com's Picasa Web Album - Jackie's Wedding Weekend |
| **Attachments:** | picasaweblogo-en_US.gif; email.jpg |

Sent via BlackBerry by AT&T

**From:** "maryrosec@gmail.com"
**Date:** Wed, 05 Aug 2009 15:43:39 +0000
**To:** <iking6497@yahoo.com>
**Subject:** Invitation to view maryrosec@gmail.com's Picasa Web Album - Jackie's Wedding Weekend

**You are invited to view maryrosec@gmail.com's photo album:** <u>Jackie's Wedding Weekend</u>



**Jackie's Wedding Weekend**
Jul 24, 2009
by maryrosec@gmail.com

**View Album**
<u>Play slideshow</u>

Message from maryrosec@gmail.com:
Hey everyone-
Finally got my photos together from Jackie and Ian's wedding. Or rather from everything before the wedding because apparently I took no photos of the actual wedding. But I did a good job at the rehearsal dinner. Enjoy!
-m

If you are having problems viewing this email, copy and paste the following into your browser:
http://picasaweb.google.com/lh/sredir?uname=maryrosec&target=ALBUM&id=5366442167023600289&authkey=Gv1sRgCM3xr7_UufuM7wE&invite=CKPElv4
F&feat=email

To share your photos or receive notification when your friends share photos, get your own free Picasa Web Albums account.

 Web Albums

Confidential

Message

| | |
|---|---|
| **From:** | ian.king1@wachovia.com [ian.king1@wachovia.com] |
| **Sent:** | 11/10/2009 12:36:39 PM |
| **To:** | iking6497@yahoo.com |
| **CC:** | ian.king1@wachovia.com |
| **Subject:** | Fw: lincoln electric |
| **Attachments:** | lincoln electric.doc; ~$ncoln electric.doc |

Between 1986 and 1991, Lincoln  Electric fell into unexpected debt while trying to finance foreign acquisitions. They followed a program of rapid foreign expansion that led to losses so deep that they almost defaulted on there loans .  Lincoln lacked international management skills.  They didn't consider the different local environments in each country when expanding globally.  The incentive system that was implemented in the U.S.  didn't go over so well in the foreign markets.  The European countries consisted of a different working environment and set of ethics.   In Germany, the average factory workweek was thirty-five hours.  In contrast, the average U.S. workweek for Lincoln's factories is between forty-three to fifty-eight hours.  This difference would not allow for the piecework way of compensating employees.

Ian King
Financial Specialist
Ramsey NJ
Office (201)934-4383
Fax   (201)236-9645

-----Forwarded by Ian King/GBG/WACH on 11/10/2009 12:36PM -----
To: ian.king1@wachovia.com
From: <iking@ramapo.edu>
Date: 11/08/2009 06:00PM
Subject: lincoln electric

Confidential

WFESI_Vangelakos 00075354

Message

| | |
|---|---|
| **From:** | Ian King/GBG/WACH [n484312@cf.wachovia.com] |
| **Sent:** | 11/10/2009 12:36:39 PM |
| **To:** | iking6497@yahoo.com |
| **CC:** | Ian King/GBG/WACH [n484312@cf.wachovia.com] |
| **Subject:** | Fw: lincoln electric |
| **Attachments:** | lincoln electric.doc; ~$ncoln electric.doc |

Between 1986 and 1991, Lincoln  Electric fell into unexpected debt while trying to finance foreign acquisitions. They followed a program of rapid foreign expansion that led to losses so deep that they almost defaulted on there loans .  Lincoln lacked international management skills.  They didn't consider the different local environments in each country when expanding globally.  The incentive system that was implemented in the U.S.  didn't go over so well in the foreign markets.  The European countries consisted of a different working environment and set of ethics.   In Germany, the average factory workweek was thirty-five hours.  In contrast, the average U.S. workweek for Lincoln's factories is between forty-three to fifty-eight hours.  This difference would not allow for the piecework way of compensating employees.

Ian King
Financial Specialist
Ramsey NJ
Office (201)934-4383
Fax    (201)236-9645


-----Forwarded by Ian King/GBG/WACH on 11/10/2009 12:36PM -----
To: ian.king1@wachovia.com
From: <iking@ramapo.edu>
Date: 11/08/2009 06:00PM
Subject: lincoln electric

Confidential

Message

| | |
|---|---|
| **From:** | iking6497@yahoo.com [iking6497@yahoo.com] |
| **Sent:** | 11/23/2009 11:41:45 AM |
| **To:** | ian.king1@wachovia.com |
| **BCC:** | n484312@cf.wachovia.com |
| **Subject:** | Fw: Power Point for Lincoln Co. |
| **Attachments:** | Lincoln Presentation-msft.ppt |

Sent via BlackBerry by AT&T

-----Original Message-----
From: Stephen Agnic <sagnic@ramapo.edu>
Date: Sun, 22 Nov 2009 12:18:57
To: Ian R King<iking@ramapo.edu>; Shannon M Murray<smurray@ramapo.edu>; <klavoie@ramapo.edu>
Cc: <iking6497@yahoo.com>
Subject: Power Point for Lincoln Co.

Here is the powerpoint. It is not in final format so it may look a little funny to you. I will finalize
it before the presentation on Tuesday so it will work on the Windows computers.

Confidential

Message

| From: | iking6497@yahoo.com [iking6497@yahoo.com] |
|---|---|
| Sent: | 11/23/2009 7:36:00 PM |
| To: | ian.king1@wachovia.com |
| BCC: | n484312@cf.wachovia.com |
| Subject: | Fw: Final Power Point for Lincoln Co. |
| Attachments: | Lincoln Presentation-msft.ppt |

Sent via BlackBerry by AT&T

-----Original Message-----
From: Stephen Agnic <sagnic@ramapo.edu>
Date: Mon, 23 Nov 2009 16:09:17
To: Stephen Agnic<sagnic@ramapo.edu>; Ian R King<iking@ramapo.edu>; Shannon M Murray<smurray@ramapo.edu>; <klavoie@ramapo.edu>
Cc: <iking6497@yahoo.com>
Subject: Final Power Point for Lincoln Co.

Here is the finished working power point. If anything needs to get added or changed, please let me know ASAP.

Call/txt me 973-800-2889.

Confidential

Message

| | |
|---|---|
| **From:** | Ian King/GBG/WACH [n484312@cf.wachovia.com] |
| **Sent:** | 12/21/2009 2:39:28 PM |
| **To:** | iking6497@yahoo.com |
| **Subject:** | Fw: Ragnar Relay - Team Update |
| **Attachments:** | ATT00390.txt |

Ian King
Financial Specialist
Ramsey NJ
Office (201)934-4383
Fax    (201)236-9645

-----Forwarded by Ian King/GBG/WACH on 12/21/2009 02:39PM -----
To: <ian.king1@wachovia.com>
From: "Keith Hollender" <KHollender@yorkhillinvestments.com>
Date: 12/21/2009 11:46AM
Subject: Ragnar Relay - Team Update

Welcome!!!  We officially have a complete team of 12 members for the Ragnar Relay.  If you are receiving this email, you are on the team, even though you are probably wondering why you agreed to participate in such an event.  It's a great motivator to improve your fitness over the winter and raise money for a really important cause...plus you get to spend 24+ hours in a van with 6 other sweaty friends.  There will be more information to follow, but below are some of the basics to get everyone mentally prepared for race day.

**When:**

The race will begin on May 14 $^{th}$ and finish on May 15 $^{th}$, so depending on our starting time (to be determined at a later date) we will likely need to take Friday off from work.

**The Basics:**

182.3 miles from Woodstock , NY to New York City .  The distance will be covered by our 12 person relay team, with each team member running 3 legs, each leg ranging between 3-8 miles and varying in difficulty.  Our team is responsible for providing two support vehicles, with six runners in each vehicle.  The first vehicle will drop off the first runner at the starting line, drive ahead to the first exchange point to pick up the first runner and drop off the second runner.  This pattern will be repeated for the first 6 legs until the race is handed off to the second vehicle of six runners.  This pattern of leapfrogging vehicles will continue all the way to the finish time.  For more information:
http://www.ragnarrelay.com/newyork/index.php

Confidential

**The Cost:**

The team fee is $1,080, which comes to $90/person (due within the next 30 days, so please send me checks or paypal to khollender@yorkhillinvestments.com).  Additional costs will include making team shirts and renting two vans as we get closer to the event.

**Volunteers:**

Each team is required to provide three volunteers for the race.  Please try and reach out to people that would be willing to help work at the event (they will be assigned a shift and not be required to work for the duration of the race).  If we don't provide three volunteers, we will be required to pay for our volunteers at a donation cost of $120.00 per volunteer.

**The Team:**

Greg Blattner

Michelle Blattner

Kevin Brophy

Shannon Brophy

Jamie Carifa

Matt Chiusano

Keith Hollender

Lauren Hollender

Ian King

Keith Liljegren

Maggie Liljegren

Hunter McCrossin

Please let us know if you think of anyone else that may want to participate as a backup in the event that someone gets injured or is unable to compete.

**Awards:**

Awards will be presented to the top 3 finishers from each category within each division.  Additionally, there will be a form available at the finish line for teams to vote of personality awards.  Personality awards are as follows: Homecoming Team

Confidential

(Overall Favorite Team); Nom De Plum (Best Team Name); Pimped Out Van (Best Decorated Van) and Far Out Fashion (Best Team Costume)

Keep the awards categories in mind as we will need to think of a team name, how we are going to decorate our vans, and what we want our uniforms to look like.  Please send along any suggestions you have so we can discuss it at our first team meeting.

## Our Cause:

We thought this would be a good opportunity to raise money for a worthy cause that has hit close to home for many of the participants on our team.  Haley Tyrrell is a 10-year old Ridgewood resident that was recently diagnosed with rare form of bone cancer called Osteosarcoma.  Since diagnosis in the beginning of September, Haley's life has been turned upside down from multiple surgeries, chemo therapy, and the recent amputation of her right leg.  Any money we can raise for Haley and her family will go a long way toward helping cover medical bills and allow Haley a more comfortable transition to life as an amputee.

We will provide more information on the fundraising effort in a subsequent communications and we will try to get a team meeting on the calendar in the near future.

Keith Hollender

Managing Director

Yorkhill Investments LLC

140 East Ridgewood Avenue

Paramus , NJ   07652

(201) 322-9001 - Phone

(201) 322-9002 - Fax

Confidential

Message

| | |
|---|---|
| **From:** | Ian King/GBG/WACH [n484312@cf.wachovia.com] |
| **Sent:** | 10/9/2009 8:56:22 AM |
| **To:** | jmcarifa@yorkhillinvestments.com |
| **Subject:** | Re: The Hunt |
| **Attachments:** | ATT01370.txt |

One of these years, we'll be able to make it!  I have to work sat....  I have midterms starting that week also.  SUCKS!  What time does it start?
Ian King
Financial Specialist
Ramsey NJ
Office (201)934-4383
Fax    (201)236-9645

-----"James M. Carifa" <jmcarifa@yorkhillinvestments.com> wrote: -----
To: <ian.king1@wachovia.com>
From: "James M. Carifa" <jmcarifa@yorkhillinvestments.com>
Date: 10/08/2009 03:44PM
Subject: The Hunt
Go Yanks!  Are you & Jackie going along with Kel and the party bus down to the Hunt on the 17th?  If not you guys should come down and hang with us at my brother Bill's spot.  Lauren, Keith, Carrie and Dan are coming.  Chris & Erin are still undecided (Erin hasn't been able to get out of work that weekend yet).  You guys can stay over at our house too Saturday night.  Good excuse to drink beers all day!

**James M. Carifa**
Yorkhill Investments, LLC
140 East Ridgewood Avenue
South Tower - Fourth Floor
Paramus, NJ  07652
(201) 322-9001 - Phone
(201) 322-9002 - Fax



WFESI_Vangelakos 00074199