IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GEORGE VANGELAKOS, IAN KING, JOSEPH KORONAKIS, AND BARRY WAYNE,<br><br>PLAINTIFFS,<br><br>V.<br><br>WELLS FARGO BANK, N.A., WELLS FARGO & COMPANY, AND WFC HOLDINGS CORPORATION,<br><br>DEFENDANTS. | CIV. NO. 13-CV-6574 (PKC) |

**JOINT MOTION FOR APPROVAL OF FLSA SETTLEMENT
AND MEMORANDUM OF LAW IN SUPPORT**

Plaintiffs George Vangelakos, Ian King, Joseph Koronakis, and Barry Wayne (collectively, "Plaintiffs") and Defendants Wells Fargo Bank, N.A., Wells Fargo & Company, and WFC Holdings Corporation (collectively, "Defendants" or "Wells Fargo") file this Joint Motion for Approval of FLSA Settlement and respectfully show as follows:

### I. INTRODUCTION AND PROCEDURAL BACKGROUND

Plaintiffs and Defendants file this joint motion for approval of the Parties' Settlement Agreement[1] and memorandum of law in support of their motion, along with the attached declarations of Plaintiffs' counsel, Rhonda H. Wills (Ex. 5) and John M. Padilla (Ex. 6). The

---

[1] Each Plaintiff executed a separate settlement agreement and release of claims. The terms and conditions of each of those settlement agreements are identical, except for the amount Defendants will pay to each Plaintiff to settle each individual Plaintiff's claims. The four separate agreements will be referred to collectively as the Parties' "Settlement Agreement," and are attached as Exhibits 1-4.

1

Plaintiffs are all former Personal Bankers and/or Financial Specialists who worked for Wells Fargo in the State of New York and/or in the State New Jersey and claim that they are entitled to unpaid overtime wages, liquidated damages, attorneys' fees, and costs for alleged overtime violations of the Fair Labor Standards Act ("FLSA"), New York Labor Law ("NYLL"), and the New York Codes, Rules and Regulations ("NYCRR").  The Plaintiffs claim that Defendants failed to pay them for: (1) off-the-clock work allegedly performed before the start of their shift, at the end of their shift, during lunch periods, and on weekends; and (2) short breaks lasting 20 minutes or less in duration.

On July 22, 2014, with the assistance of a mediator at a full-day mediation, the Parties reached a binding Settlement Agreement regarding this matter.  Attached hereto as Exhibits 1 through 4 is a copy of each Plaintiff's settlement agreement for the Court's review and approval. Plaintiffs faced litigation risks as to both liability and damages, including: (1) overcoming Defendants' defenses; (2) proving willfulness in order to obtain a third-year of FLSA damages; and (3) the possibility that Plaintiffs could receive damages that were far less at trial.  In light of these risks, the Settlement Agreement is fair because it provides Plaintiffs with compensation and adequate value for their claims in light of the risks involved, while avoiding the uncertainty inherent in litigation, including the risk that Plaintiffs could recover less than they were seeking at trial, or possibly nothing.  The amount that each Plaintiff will receive reflects a careful balancing of the maximum potential recovery that Plaintiffs might have obtained had they succeeded on all claims and the risk that their claims would not ultimately prevail in whole or in part. The Parties' Settlement Agreement should be approved for the reasons set forth below.

## II.    ARGUMENT AND AUTHORITIES

**A.    Each Plaintiff's Settlement Amount Is Fair and Reasonable.**

Under the FLSA, a district court must review a settlement agreement to determine that the settlement is fair and reasonable prior to entering judgment dismissing a case. *Davis v. J.P. Morgan Chase & Co.*, 775 F. Supp. 2d 601, 604 (W.D.N.Y. 2011) (FLSA settlements require court approval). The parties must present the Court "with sufficient evidence in order to determine whether the settlement agreement represents a fair and reasonable resolution of [the] disputes." *Mosquera v. Masad Auto Sales, Ltd.*, No. 09-cv-4925 (NGG), 2011 U.S. Dist. LEXIS 7746, at *3 (E.D.N.Y. Jan. 25, 2011) (internal quotations omitted); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 476 (S.D.N.Y. 2013) ("If the proposed FLSA settlement reflects a reasonable compromise over contested issues, it should be approved.").

The parties' submission must also establish that the settlement is not "a mere waiver of statutory rights brought about by an employer's overreaching." *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07-cv-86, 2008 U.S. Dist. LEXIS 20786, at *2 (E.D.N.Y. Mar. 13, 2008); *see also Martinez v. Ragtime Foods of NY, Inc.*, No. 11-cv-1483 (JP) (CLP), 2011 U.S Dist. LEXIS 130357, at *4 (E.D.N.Y. Nov. 10, 2011).

To determine whether the proposed settlement is fair and reasonable, courts consider the totality of the circumstances, including the following five factors:

> (1) the plaintiff's range of possible recovery; (2) the extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses;" (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel;" and (5) the possibility of fraud or collusion.

*Wolinsky v. Scholastic Inc.*, No. 11-cv-5917 (JMF), 2012 U.S. Dist. LEXIS 93918, at *4-5 (S.D.N.Y. July 5, 2012) (citing *Medley v. Am. Cancer Soc.,* No. 10-cv-3214 (BSJ), 2010 U.S. Dist. LEXIS 75098, at *3 (S.D.N.Y. July 23, 2010)); *see also Hernandez v. Tabak,* No. 12-civ- 1402 (PKC), 2013 U.S. Dist. LEXIS 51852, at *1-2 (S.D.N.Y. Apr. 10, 2013) (same).

In considering these factors, courts may approve settlements on a basis that does not require full payment of plaintiff's claims or liquidated damages. *See, e.g., Elliot v. Allstate Investigations, Inc.*, No. 07-cv-6078 (DLC), 2008 U.S. Dist. LEXIS 21090, at *5-6 (S.D.N.Y. Mar. 19, 2008) (approving a settlement that was less than plaintiff's claims where plaintiff lacked documentary evidence to support his claims and the settlement compensates the plaintiff for his owed compensation and half of the liquidated damages); *Sampaio v. Boulder Rock Creek Developers, Inc.*, No. 07-cv-153 (ETB), 2007 U.S. Dist. LEXIS 66013, at *3 (E.D.N.Y. Sept. 6, 2007) (approving settlement as reasonable in light of no documentation of the hours that plaintiff worked, the parties' disputes on the number of hours plaintiff worked, and the "respective burdens the parties face with respect to their claims and defenses").

    **1.**    **The Settlement Agreements provide the Plaintiffs with a fair and reasonable recovery considering the totality of the circumstances.**

The Plaintiffs' cumulative possible recovery in this matter, depending on the resolution of certain factual and legal issues, ranged from $0 to approximately $973,000, exclusive of attorneys' fees. The determination of whether a settlement amount is reasonable "does not involve use of a mathematical equation yielding a particularized sum." *Frank v. Eastment Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005). "Instead, there is a range of reasonableness with respect to a settlement- a range which recognize[s] the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).

The Parties agreed that the amounts reflected in the Settlement Agreements are fair and reasonable considering the totality of the circumstances, and are in the best interest of the Parties. Plaintiffs' counsel examined Wells Fargo's pay records showing their work periods and compensation structure, and based on this information, Plaintiffs' counsel was able to perform

4

damage calculations. The following estimates of damages prepared by Plaintiffs' counsel, which were shared with Defendants and the mediator at mediation, were focal points of the negotiation process:

| Plaintiff | Unrecorded Hours Per Week for Off-the-Clock Claim | Unpaid Wages For Off-the-Clock Claim | Liquidated Damages for Off-the-Clock Claim | Total Number of Recorded Short Breaks | Total Time for Short Breaks (Hrs) | Unpaid Wages for Short Breaks | Liquidated Damages for Short Breaks | Total Unpaid Wages and Liquidated Damages for Off-the-Clock Claims and Short Breaks |
|---|---|---|---|---|---|---|---|---|
| George Vangelakos | 30 | $223,034.45 | $99,823.12 | 159 | 42.75 | $710.52 | $429.45 | $323,997.54 |
| Ian King | 20 | $70,834.20 | $17,708.55 | 81 | 26.77 | $440.01 | $110.00 | $89,092.76 |
| Joseph Koronakis | 20 | $122,079.79 | $75,745.33 | 16 | 3.87 | $88.31 | $22.08 | $197,935.51 |
| Barry Wayne | 20 | $284,342.88 | $77,916.09 | 4 | 1.05 | $78.62 | $78.62 | $362,416.21 |

Based on the chart provided, the total maximum unpaid wages alleged by Plaintiffs is $701,608.78 and the total maximum liquidated damages alleged by Plaintiffs is $271,833.24, equating to a potential maximum recovery for Plaintiffs of $973,442.02, exclusive of attorneys' fees. These calculations assume, of course, that Plaintiffs would be successful in proving all violations alleged, and were to obtain the maximum recoverable liquidated damages under the FLSA and NYLL. For example, the above calculations assume (1) the Plaintiffs worked all of the overtime hours they claim they worked; (2) the underpayment was willful, which allows a three-year look back period of recovery under the FLSA and the recovery of liquidated damages under New York Labor Law; (3) Defendants did not act in good faith, and therefore Plaintiffs are entitled to liquidated damages under the FLSA; (4) as it relates to Joseph Koronakis, he was misclassified

5

as exempt from the overtime requirements of NYLL and the FLSA;[2] and (5) as it relates to Ian King and George Vangelakos, they worked in New York (as opposed to New Jersey) to the full extent they so allege.[3]

If, for example, Defendants prevailed on the contested willfulness issue, a two-year statute of limitations would apply to the matter reducing the overall FLSA damage profile by approximately $160,000. In addition, because liquidated damages under the NYLL require a finding of willfulness, if a jury were to find that Wells Fargo's conduct was not willful, the NYLL liquidated damages would be reduced by approximately $157,000, resulting in a commensurate reduction of the overall damage profile.

Moreover, if the Court were to find as a matter of law, or a jury were to find as a matter of fact, that the fluctuating workweek should apply, the damages would be further reduced. For example, Mr. Vangelakos' compensatory damages would be reduced by approximately $100,000, Mr. King's compensatory damages would be reduced by approximately $47,000, Mr. Koronakis' compensatory damages would be reduced by approximately $23,000 and Mr. Wayne's compensatory damages would be reduced by approximately $160,000. There would also be a proportionate reduction in liquidated damages even if those damages were otherwise recoverable.

Here, the Settlement Agreements provide for a global settlement fund of $350,000.00 (including fees and expenses), with Plaintiffs collectively receiving $159,000 to settle their claims

---

[2] Defendants contended that Mr. Koronakis was properly classified as a manager and therefore exempt from the overtime requirements of NYLL and the FLSA for a portion of his employment with Wells Fargo.

[3] Work performed in New York is subject to a 6 year look back statute of limitations under NYLL. However, unpaid overtime worked in New Jersey is only recoverable during the 2 year/3 year (for willful violations) "lookback" under the FLSA, because unlike New York, New Jersey does not have a longer statute of limitations than the FLSA. Ian King and George Vangelakos worked in both New York and New Jersey, and to some extent their recovery is dependent on their ability to prove the nature and extent of time they spent covering New York branches while they were permanently assigned to work in New Jersey.

against Wells Fargo. The amount that each Plaintiff will receive reflects a careful balancing of the strengths of the underlying claims and the risk that their claims might not ultimately prevail in all respects. The Settlement Agreements (Exs. 1-4) provide the following amounts for unpaid wages and liquidated damages to each of the Plaintiffs: (1) Barry Wayne, $53,000; (2) Ian King, $24,000; (3) George Vangelakos, $50,000; and (4) Joseph Koronakis, $32,000. In addition to these amounts being paid directly to the Plaintiffs for unpaid wages and liquidated damages, Defendants also agreed to pay $140,000 in attorneys' fees and $51,000 in litigation expenses and costs to Plaintiffs' attorneys. Weighing the benefits of the settlement against the risks associated with proceeding in the litigation, the settlement is reasonable.

   **2.    The Parties faced litigation risks, and the settlement enabled the Parties to avoid anticipated burdens and expenses in establishing their claims and defenses.**

"Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement," and "approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *Tiro v. Public House Invs.,* LLC, No. 11 Civ. 7679 (CM), 2013 U.S. Dist. LEXIS 129258, at *31-32 (S.D.N.Y. Sept. 10, 2013). Among other things, there are legitimate and substantial disagreements among the Parties regarding: (a) the number of hours, if any, each Plaintiff allegedly worked off-the-clock each work week; (b) whether each of the Plaintiffs' supervisors and managers were aware that Plaintiffs were working off the clock; (c) whether the Fluctuating Workweek method applies; and (d) whether any alleged FLSA violation was willful which affects the length of the applicable statute of limitations and amount of Plaintiffs' potential recovery. Had the Parties continued to litigate this lawsuit and had Defendants ultimately succeeded on some or all of these issues, Plaintiffs' damages could have been reduced or foreclosed entirely.

Here, the Parties' settlement is fair and reasonable because this matter is greatly contested with respect to the facts at issue and whether Plaintiffs would ultimately prevail on their FLSA and NYLL claims. "Therefore, this settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses." *Medley v. Am. Cancer Soc.,* No. 10 Civ. 3214(BSJ), 2010 U.S. Dist. LEXIS 75098, at *3 (S.D.N.Y. July 23, 2010).

### 3. The Settlement Agreements are the products of arm's-length bargaining between experienced counsel, and no fraud or collusion exists between the Parties.

"In FLSA settlements…arm's-length negotiations involving counsel and a mediator raise a presumption that the settlement achieved is procedurally fair, reasonable, adequate, and not a product of collusion." *Diaz v. Scores Holding Co.,* No. 07 Civ. 8718 (THK), 2011 U.S. Dist. LEXIS 112187, at *8-9 (S.D.N.Y. July 11, 2011). Here, the settlement is the result of extensive arm's length negotiations between the Parties' counsel, both prior to and during a full-day mediation. The Parties engaged in an extensive mediation, and only upon a mediator's proposal were the Parties able to come to a resolution. Moreover, the Parties in this case engaged in extensive discovery, including the production and analysis of thousands of pages of the Plaintiffs' timekeeping and payroll documents, as well as voluminous e-mail records. As part of their negotiations, the Parties considered the maximum recovery Plaintiffs could obtain if this matter proceeded and they prevailed, and weighed it against the likelihood of their success.

Based upon the understandings and assessments of each party, the Parties, acting at arms-length, in good faith, and with the advice of counsel, have negotiated and entered into the Settlement Agreement. In exchange for these payments, Plaintiffs agree to release Defendants from any and all claims they may have against Defendants as of the date of the releases (as more thoroughly described in those documents), including, but not limited to, claims for unpaid overtime

and minimum wages, liquidated damages, costs, litigation expenses, interest and attorneys' fees. Furthermore, Plaintiffs and Defendants are each represented by counsel experienced in litigating wage and hour disputes, and FLSA claims in particular, and Plaintiffs have been represented by counsel at all time since this lawsuit was commenced.  *See* Exs. 5-6.

**B.     This Court Should Approve Plaintiffs' Attorneys' Fees and Costs Because the Amounts are Reasonable and Were Negotiated at Arms-Length.**

Where, like here, a proposed settlement of FLSA claims includes the payment of attorneys' fees, the court must also assess the reasonableness of the fee award.  29 U.S.C. § 216(b) ("The Court…shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."); *Misiewicz v. D'Onofrio Gen. Contractors Corp.*, No. 08-cv-4377 (KAM)(CLP), 2010 U.S. Dist. LEXIS 60985, at *13 (E.D.N.Y. May 17, 2010) (reviewing attorney's fees agreed to in settlement of an individual FLSA claim for reasonableness).  The FLSA does not require the court to assess the fairness of an agreed payment of attorney's fees.  *Chapman-Green v. Icahn House West LLC*, No. 11 Civ. 1190(MHD), 2013 U.S. Dist. LEXIS 25671, at *7 (S.D.N.Y. Feb. 21, 2013) (approving attorney fee award and noting that the fee agreement was consensual).  Instead, the Court ensures "that an employer does not take advantage of an employee in settling his claim for wages…not that the employee does not overcharge the employer."  *Id.*  "A greater range of reasonableness" therefore exists in approving the agreed upon attorneys' fees when reached through negotiation.  *Id.*

Negotiated attorneys' fee agreements are favored by the courts.  Federal courts encourage litigants to resolve fee issues by agreement whenever possible.  *See, e.g., M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 829 (D. Mass. 1987) ("Whether a defendant is required by statute or agrees as part of the settlement of a class action to pay the plaintiffs' attorneys fees, ideally the parties will settle the amount of the fee between themselves."); *Johnson v. Ga.*

*Hwy. Express, Inc.*, 488 F.2d 714, 720 (5th Cir. 1974) ("In cases of this kind, we encourage counsel on both sides to utilize their best efforts to understandingly, sympathetically and professionally arrive at a settlement as to attorney's fees.").

The virtue of a fee negotiated by the Parties at arm's-length is that it is, in effect, a market-set price. Defendants have an interest in minimizing the fee, and Plaintiffs have an interest in maximizing it. The negotiations regarding attorneys' fees are informed by the Parties' knowledge of the work done, the results achieved, and their views on what the court might award if the matter were litigated. In *In re Continental Illinois Securities Litig.*, 962 F.2d 566 (7th Cir. 1992), Judge Posner of the Seventh Circuit endorsed a market-based approach to evaluating fee requests. "[I]t is not the function of judges in fee litigation to determine the equivalent of the medieval just price." *Id.* at 568. "It is to determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order." *Id.* "Markets know market values better than judges do." *Id.* at 570. "The object in awarding a reasonable attorney's fee…is to give the lawyer what he would have gotten in the way of a fee in an arms' length negotiation, had one been feasible." *Id.* at 572.

Here, the Settlement Agreements, including the amounts for attorneys' fees and costs, were negotiated at arm's length by sophisticated counsel familiar with the case, the risks for both sides, the nature of the result obtained for the Plaintiffs, and the magnitude of the fee the Court might award if the matter were litigated. Thus, the negotiated fee is entitled to a presumption of reasonableness and should be approved. *See, e.g. Lliguichuzhca v. Cinema 60, LLC,* 948 F.Supp.2d 362, 366 (S.D.N.Y. 2013) (approving FLSA settlement because "where the fees are set as part of negotiations between the parties, there is a greater range of reasonableness for approving attorney's fees) (quotations omitted).

Plaintiffs' counsel represent that the amount allocated for attorneys' fees and costs is fully supported by time records and includes expenses incurred in relation to all of Plaintiffs' claims, such as electronic legal research, deposition costs, mediation costs, travel expenses, copy costs, and court costs. The Settlement Agreement provides for the payment of $140,000.00 in attorneys' fees and $51,000 in case expenses.[4]

The parties faced a number of disputed discovery issues and engaged in substantial discovery. The Parties involved the Court on more than one occasion regarding, among other things: (1) the depositions of witnesses that Defendants contended were improper "apex depositions," and (2) quashing two subpoenas Wells Fargo served in an effort to obtain school and business records for Plaintiffs Ian King and Barry Wayne, respectively. Ultimately, discovery included the production and analysis of thousands of pages of the Plaintiffs' timekeeping and payroll documents and e-mails. Wells Fargo deposed all Plaintiffs in this matter, and Plaintiffs filed motions to compel the depositions of Michelle Lee and Janice Osdoby over Wells Fargo's "apex" objections. Plaintiffs deposed two former Wells Fargo managers, Janice Osdoby and Veronica Ross.

Plaintiffs' counsel and their respective law firms, Wills Law Firm, PLLC and Padilla & Rodriguez, LLP, expended collectively 712 hours of professional services that results in a value of $240,506.25, if charged on an hourly basis at reasonable rates in the legal market.[5] Plaintiffs' counsel is paid at a blended rate of $196 per hour when taking into account their 712 hours of work on this matter and the payment of $140,000.00 in attorneys' fees.

---

[4] Settlement Agreement (Exs. 1-4); Wills Decl. at ¶ 17 (Ex. 5).

[5] Wills Decl. at ¶ 11 (Ex. 5); Padilla Decl. at ¶ 17 (Ex. 6).

11

Accordingly, the value of the time expended by Plaintiffs' counsel greatly exceeds the amount allotted for attorneys' fees in the Settlement Agreement.  Upon the Court's request, Plaintiffs' counsel are able to provide detailed statements showing the time spent by attorneys working on these cases and billing information detailing every expense incurred.  Plaintiffs have each signed the Settlement Agreement in which they have agreed to this settlement of attorney's fees and costs.  As the Parties agreed to this fee allocation in connection with the arm's-length settlement negotiations, and the amount is reasonable under the circumstances, the Parties respectfully request that this Court approve the fee and costs award.

### III. CONCLUSION

For all the foregoing reasons, the Parties respectfully request that this Court review the attached settlement agreements (Exhibits 1-4) and issue an Order approving their Settlement Agreement and dismissing this lawsuit with prejudice with each side bearing its own attorneys' fees and costs, except to the extent provided for in the Settlement Agreement.

Dated: Houston, Texas
      August 5, 2014

WILLS LAW FIRM, PLLC

By: /s/ Rhonda H. Wills
    Rhonda H. Wills (pro hac vice)
    1776 Yorktown, Suite 570
    Houston, Texas 77056
    Telephone: (713) 528-4455
    Facsimile: (713) 528-2074

KRAKOWER DICHIARA, LLC
    Michael DiChiara
    One Depot Square
    77 Market Street, Suite 2
    Park Ridge, New Jersey 07656
    Telephone: (201) 746-0303
    Facsimile: (866) 417-2333

PADILLA & RODRIGUEZ, LLP
    John M. Padilla (pro hac vice)
    1776 Yorktown, Suite 110
    Houston, Texas 77056
    Telephone: (832) 740-4300
    Facsimile: (832) 740-4301

    ATTORNEYS FOR PLAINTIFFS

Dated: Houston, Texas
      August 5, 2014

SEYFARTH SHAW, LLP

By: /s/ Timothy M. Watson w/permission
    Timoth M. Watson (pro hac vice)
    Esteban Shardonofsky (pro hac vice)
    700 Milam Street, Suite 1400
    Houston, Texas 77002
    Telephone: (713) 225-2300
    Facsimile: (713) 225-2340

    Robert S. Whitman
    Adam J. Smiley
    620 Eight Avenue
    New York, New York 10018
    Telephone: (212) 218-5500
    Facsimile (917) 344-1258

ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

       I, the undersigned counsel, hereby certify that the foregoing document has been electronically filed with the Clerk of the Court by using the CM/ECF system, which will in turn send a notice of the electronic filing to all counsel of record, on this 5th day of August, 2014.

       Timothy M. Watson
       Esteban Shardonofsky
       700 Milam Street, Suite 1400
       Houston, Texas 77002

       Robert S. Whitman
       Adam J. Smiley
       620 Eighth Avenue
       New York, New York 10018

                                              /s/ John M. Padilla
                                              John M. Padilla